BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, et al., PRETERM INFANT NUTRITION PRODUCT LIABILITY LITIGATION | MDL No. 3026 |

**RESPONSE OF INTERESTED PARTY PLAINTIFFS DEONDRICK BROWN, SR.,** *individually and on behalf of* **DEONDRICK BROWN, JR., and REBEKAH ETIENNE,** *individually and on behalf of* **DEONDRICK BROWN, JR.**
**IN SUPPORT OF INTERESTED PARTY RESPONSE OF PLAINTIFFS HALL AND SHINDEL FOR TRANSFER AND COORDINATION OR CONSOLIDATION PURSUANT TO 28 U.S.C. §1407**

### I.   INTRODUCTION

Interested Party Plaintiffs Deondrick Brown, Sr., individually and on the behalf of Deondrick Brown, Jr. and Rebekah Etienne, individually and on the behalf of Deondrick Brown, Jr. (collectively "Plaintiffs") file this response in support of and consistent with the response of Plaintiff Shannon E. Hall and Plaintiff Erika Shindel seeking transfer and coordination or consolidation in the U.S. District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1407 (Resp. of Hall and Shindel, ECF No. 40).

Plaintiffs' action, *Brown, Sr., et al. v. Abbott Laboratories, Inc., et al.,* Case 3:21-cv-00687-SDD-EWD, is pending in the Middle District of Louisiana, where the Defendants Abbott Laboratories, Inc. and Mead Johnson & Company, LLC (collectively "Defendants"), were registered as foreign entities authorized to conduct business in the State of Louisiana.  Plaintiffs are all Louisiana residents.  Plaintiffs' case against Defendants is same/similar to others brought against both Defendants and/or either Abbott Laboratories or Mead Johnson & Company singularly.  These cases arise from the same conduct and omissions such that they share the same

basic theory of liability, similar general factual allegations, the same specific injury (necrotizing enterocolitis), and the same factual questions regarding general causation.

The primary issue before the Panel is which of the prospective courts is the most appropriate transferee forum. For the reasons set forth below, Plaintiffs submit that the U.S. District Court in the Northern District of Illinois is best situated to oversee the pretrial proceedings of these cases because it is the judicial district within which the Defendants hold or held their corporate offices and will thus be the location of many of the relevant witnesses, documents, and evidence. In addition, the pertinent judicial statistics of that forum are favorable: it is the venue where the most related cases are pending; the venue is centrally located; the venue is easily accessible; the venue is adept at handling MDL litigation. Indeed, there are currently ten (10) preterm infant nutrition products actions filed in that District, spread among nine (9) District Judges. The Honorable Joan Lefkow and the Honorable Sharon Johnson Coleman are two Northern District of Illinois judges presently assigned a preterm infant nutrition product case, and both have experience with MDL's such that assignment to and consolidation before either Judge would be a good fit for this MDL.

## II.   FACTUAL BACKGROUND

Plaintiffs in each of the Related Actions allege that the cow's milk-based preterm formulas manufactured and sold by the Abbott Laboratories, Inc. or Mead Johnson & Company lack proper warning to mothers and hospital staffs regarding the increased risk of necrotizing enterocolitis ("NEC") despite knowledge and awareness of such risk. Abbott designs, manufactures, and sells cow's milk-based preterm infant nutrition products under the brand name Similac®. Mead Johnson designs, manufactures, and sells cow's milk-based preterm infant nutrition products under the brand name Enfamil®. Similac® and Enfamil® are by far the most common cow's milk-based food

products fed to premature infants in Neonatal Intensive Care Units (NICU) in the United States, and, because of how similar they are, are often used interchangeably by NICU staff.

Over past several years, scientific and medical literature has observed and confirmed strong links between the development of NEC in preterm infants following a feeding regimen that includes cow's milk-based formulas.[1] Yet, despite the growing body of scientific literature and the existence of feasible alternatives, Defendants continue to produce, market, and sell such products specifically for preterm infants, which has resulted in the development of NEC in thousands of preterm infants in the United States.[2] Defendants' acts and omissions have resulted in the injury and death of numerous preterm infants fed their cow's milk-based products.

### III.     ARGUMENT

Plaintiffs agree with Movant that an MDL should be created in this litigation. All of the actions assert overlapping claims and allegations based on multiple common factual allegations and will involve common legal theories. Consolidated or coordinated pretrial treatment under §1407 will assist the parties and the courts in avoiding duplicative rulings on the common issues in dispute. Granting this motion will also serve the convenience of the parties and witnesses and promote the just and efficient resolution of the litigation.

    **A.     Transfer and Consolidation or Coordination Are Appropriate Under 28 U.S.C. § 1407 Because the Related Actions Involve Common Questions of Fact.**

---

[1] *See*, Exhibit A, Complaint, *Deondrick, Sr. et al., v. Abbott Laboratories, Inc., et al.,* at ¶¶15-25. (Plaintiffs amended their complaint on 1/18/2022, but Abbott's Transfer Motion filed attached the original complaint only (JPML, Dkt. 1-22). Accordingly, Plaintiffs reference the paragraphs of the amended complaint attached hereto.).
[2] *Id.* at ¶¶26-42.

The threshold requirement for centralization pursuant to §1407 is the presence of common questions of fact, but the statute "does not require a complete identity or even [a] majority of common factual issues as a prerequisite to transfer." *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381-82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims); *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007) ("[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands.").

Here, the core factual issues in each Related Action are the same, *i.e.*, whether the Defendants' manufacture and promotion of cow's milk-based formulas are defective and dangerous, that a feasible alternative design exists, that both Similac® and Enfamil® lack adequate warnings, and that Defendants' conduct resulted in severe injury to infants, including death. These common factual issues predominate over any individual questions of fact in each related Action, and any potential defenses will likely depend on the same evidence. To the extent that differences among the cases may exist, the transferee judge would have broad discretion to employ any number of pretrial techniques to address those differences and efficiently manage the various aspects of the litigation. *See, e.g.*, *In re Lehman Bros. Holdings, Inc.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009). Centralization in one district, with coordinated discovery, is thus appropriate because it will minimize duplication of effort and burden on all parties. *See In re "Factor VIII or IX Concentrate Blood Prods." Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993).

Moreover, the creation of an MDL will minimize the risk of inconsistent rulings from various district courts. All pending actions rely upon similar legal theories of recovery, and all share uniform related underlying legal theories of liability concerning the Defendants' conduct in manufacturing, marketing, and selling of the cow's milk-based preterm infant formula and failing to warn over the risks related to same.

Accordingly, because numerous common issues of fact exist among these cases, the pending actions clearly satisfy the first element of the transfer analysis under §1407. *See, e.g.*, *In re Heartland Payment Sys., Inc.*, 626 F. Supp. 2d 1336, 1337 (J.P.M.L. 2009) ("[W]e find that these actions involve common questions of fact, and that centralization under Section 1407...will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.... Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

**B.     Transfer Will Serve the Convenience of the Parties, Prevent Duplicative Discovery, and Promote the Just and Efficient Resolution of These Actions.**

The convenience of the parties and prevention of duplicative discovery also favor transfer and consolidation. *See* 28 U.S.C. §1407. If these cases proceed separately outside of an MDL, there will be extensive duplicative discovery in multiple districts because of the many overlapping issues of fact and law. Multiple cases would involve repetitive depositions of the same company representatives and expert witnesses, as well as production of the same records and responses to duplicative interrogatories and document requests in numerous jurisdictions around the country. *See, e.g.*, *In re: Pilot Flying J Fuel Rebate Contract Litig.*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [Defendant's] officers and employees and duplicative document discovery regarding the alleged scheme."). Absent transfer and

consolidation or coordination, the federal courts will be forced to administer—and Defendants will be compelled to defend—numerous Related Actions across numerous venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements.

This Panel has routinely recognized that consolidating litigation in one court benefits both Plaintiffs and Defendants. Pretrial transfer reduces discovery delays and costs for Plaintiffs and permits Plaintiffs' counsel to coordinate their efforts and share the pretrial workload. At the same time, Defendants' document production is centralized, and travel obligations for the key witnesses are minimized. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned.").

Similarly, transfer will result in a more just and efficient resolution to the litigation. The Panel recognizes multiple factors as informing whether the just and efficient conduct of a litigation will be advanced by transfer, including: (i) avoidance of conflicting rulings in various cases; (ii) prevention of duplication of discovery on common issues; (iii) avoidance of conflicting and duplicative pretrial conferences; (iv) advancing judicial economy; and (v) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re: Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010); *In re Bristol Bay, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506 (J.P.M.L. 1976). A single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all federal cases will help reduce witness inconvenience, the cumulative burden on the courts, the litigation's overall expense, and

the potential for conflicting rulings. Accordingly, transfer to a single district court is warranted here.

      **C.**    **The Most Appropriate Transferee Forum is the Northern District of Illinois.**

Plaintiffs respectfully submit that the Norther District of Illinois is the most appropriate transfer venue, as that district court has the strongest nexus to Defendants and to the conduct out of which the claims in this litigation arise. Defendant Abbott Laboratories, Inc. operates out of Abbott Park, Illinois, a Northern suburb of Chicago. *Sales Practices Litig.*, 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003). Defendant Mead Johnson & Company, LLC has a principal business office in Chicago, Illinois. Accordingly, many of the key witnesses will be located in the Northern District of Illinois. Because both Defendants are present there, it is likely that employees and executives who have knowledge regarding the manufacture, design, labeling, marketing and sales of Defendants' preterm infant formulas are located in, or near, the Northern District of Illinois. The Panel has found that the district court with the strongest nexus to the litigation is often selected as the transferee court. *See, e.g., In re: Reciprocal of Am. (ROA) Sales Practices Litig.,* 281 F. Supp. 2d 1356, 1358 (J.P.M.L. 2003).

It is Plaintiffs' understanding that the Hon. Joan Lefkow has the lowest numbered Related Case pending in the Northern District of Illinois – *Koeth v. Mead Johnson & Company, LLC, et al.*, C.A. No. 1-21-cv-6234 (N.D. Ill.). Judge Lefkow is an experienced jurist, having served in the Norther District of Illinois as a Magistrate Judge from 1982-1997, as a Bankruptcy Judge from 1997-2000, as a District Judge from 2000-2012, and as a Senior Judge from 2012 through the present. Judge Lefkow also has MDL experience, having previously presided over MDL 2371, *In re Unified Messaging Solutions LLC Patent Litigation.* Judge Lefkow would be an excellent judge to preside over the preterm infant nutrition product liability litigation MDL.

The Honorable Sharon Johnson Coleman, who is also presiding over a Related Action in the Northern District of Illinois, served as a Judge of the Circuit Court of Cook County, Illinois from 1996 to 2008, as a Judge on the Illinois Appellate Court from 2008 to 2010, and has served as a District Judge from 2010 through the present. Like Judge Lefkow, Judge Johnson Coleman has MDL experience, presiding over MDL 2967, *In re: Clearview AI, Inc., Consumer Privacy Litigation.* Judge Johnson Coleman would be an excellent judge to preside over the preterm infant nutrition product liability litigation MDL.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs Deondrick Brown, Sr., individually and on behalf of Deondrick Brown, Jr. and Rebekah Etienne, individually and on behalf of Deondrick Brown, Jr., respectfully request that the Panel grant the Response and Request for Transfer and Coordination or Consolidation under 28 U.S.C. §1407 and transfer these Related Actions to the Northern District of Illinois before either the Honorable Joan Lefkow or the Honorable Sharon Johnson Coleman.

Dated: February 9, 2022                                     Respectfully submitted,

                                                     */s/ Pearl A. Robertson*
Pearl A. Robertson (La. Bar #34060)
probertson@irpinolaw.com
Anthony D. Irpino (La. Bar #24727)
airpino@irpinolaw.com
**IRPINO AVIN HAWKINS**
2216 Magazine Street
New Orleans, LA 70130
Telephone: 504-525-1500
Fax: 504-525-1501

*Attorneys for Plaintiffs Deondrick Brown, Sr. and Rebekah Etienne*

8